# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

GARY V.[1],

                                                      Plaintiff,

    v.                                                          3:18-CV-125 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                                      Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
JUNE L. BYUN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 5).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") on March 18, 2014, alleging disability beginning December 31, 2010. (Administrative Transcript ("T") at 11, 140-48). His application was denied initially on August 1, 2014. (T. 205-210). Administrative Law Judge ("ALJ") Michael Carr

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

conducted a hearing on March 3, 2016, at which plaintiff and Vocational Expert ("VE") Suman Srinivasan testified. (T. 61-99).

In a decision dated November 23, 2016, the ALJ found that plaintiff was not disabled. (T. 8-23). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on December 7, 2017. (T. 1-7).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently

engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. **FACTS**

As of the date of the March 3, 2016 administrative hearing, plaintiff was 53 years old. (T. 72). Plaintiff had completed the tenth grade in regular education classes, before leaving school. (T. 641). He subsequently obtained his G.E.D. (T. 73, 641). He resided alone. (T. 72). He had a driver's license, but typically limited his travel to visiting family members or going shopping. (T. 74). Plaintiff's previous employment included work as a carpenter, and self-employment in a janitorial business that primarily cleaned

commercial offices. (T. 67-69, 253). Most recently, he had worked as a sales associate for a large hardware retailer. (T. 69-72, 253).

Plaintiff had experienced lower back pain since a workplace injury in 1989. (T. 648). He testified that he experienced pain in the lumbar region that became aggravated when he was required to maintain one position for too long. (T. 74). He was unable to perform any heavy lifting, and had difficulty bending over to pick up items off the floor. (*Id.*) The pain became worse when he was in cold temperatures or stood on hard surfaces, such as concrete. (T. 75). He was diagnosed with degenerative disc disease in 2007, and experienced frequent neck pain and tension headaches. (T. 648). He was diagnosed with Type 2 diabetes in 2004, and experienced peripheral neuropathy in his hands. (T. 398, 648, 748-49).

Plaintiff had received regular psychiatric treatment for depression, social phobia, and anxiety since at least August 2005. (T. 593, 641). He had never been hospitalized, and his symptoms were generally stable with medication. (T. 655). He testified that his symptoms were generally worse in the wintertime, but that he often avoided social situations, and had experienced increasing difficulty with customer interactions before leaving his former sales associate position. (T. 79-82)

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 13-17). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his SSI application date of March 18, 2014. (T. 13). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: obesity; degenerative disc disease; sleep apnea; peripheral neuropathy; and diabetes mellitus. (T. 13-15). He also determined that plaintiff's carpal tunnel syndrome, major depressive disorder, social phobia, attention deficit disorder, and possible fibromyalgia did not rise to the level of severe impairments. (T. 13-14). At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 15).

The ALJ found at step four of the analysis that plaintiff could perform less than the full range of light work. (T. 15-17). Specifically, the ALJ found that plaintiff could frequently push and pull, but could only occasionally reach overhead bilaterally, balance, stoop, kneel, crouch, and crawl. (T. 15). Plaintiff could occasionally climb ramps and stairs, but could not climb ladders, ropes, or scaffolds. (*Id.*) The ALJ also found that plaintiff could tolerate frequent exposure to extreme cold. (*Id.*) In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Ruling ("SSR") 96-4p. (*Id.*) Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R.

§ 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 16). The ALJ then determined that plaintiff was unable to perform his past relevant work. (T. 17). Relying on the VE testimony, the ALJ determined at step five that plaintiff would be able to perform jobs that existed in significant numbers in the national economy. (T. 18). Therefore, the ALJ determined that plaintiff had not been under a disability from the application date of March 18, 2014, through the date of his decision. (T. 18-19).

V. **ISSUES IN CONTENTION**

Plaintiff raises the following arguments:

1. The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 20-22) (Dkt. No. 10).

2. The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 21-22).

3. The ALJ failed to properly develop the administrative record. (Pl.'s Br. at 14-20).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 12-19) (Dkt. No. 11). For the following reasons, this court agrees with defendant and will dismiss the complaint.

7

## DISCUSSION

## VI. RFC EVALUATION/TREATING PHYSICIAN

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-

medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## B. Application

As stated above, it is the province of the ALJ to resolve genuine conflicts in the record. *Veino*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the objective medical record, medical opinion evidence, and plaintiff's testimony by assigning the greatest weight to that evidence that he deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made

9

an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). In light of the ALJ's analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that his RFC determination was supported by substantial evidence, as summarized below.

### 1.  Physical Limitations

As noted above, the ALJ found that plaintiff could perform less than the full range of light work. (T. 23). Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's physical impairments. (Pl.'s Br. at 16-20). This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

In reaching the physical RFC determination, the ALJ gave "significant weight" to consultative examiner Dr. Rita Figueroa's opinion that plaintiff had "moderate limitations for standing, walking, bending, lifting, and carrying due to chronic low back pain." (T. 17). As a general rule, a consultative physician's use of the terms "moderate" and "mild" as they related to restrictions on physical functions such as standing, walking, and sitting is too vague to constitute substantial evidence that the plaintiff could perform the requirements of light or sedentary work. *Curry v. Apfel,* 209 F.3d 117, 123-24 (2d Cir. 2000) (superseded by statute on other grounds). While this general statement may still be true, more recent cases have held that when there is other

10

medical evidence, in addition to an RFC evaluation using terms such as "mild" and "moderate," such terms may properly be relied on the RFC analysis. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013).

Here, Dr. Figueroa conducted a physical examination on July 23, 2014, during which plaintiff demonstrated a normal gait, was able to walk on heels and toes without difficulty, and needed no assistance changing for the examination, getting on or off the examination table, or rising from his chair. (T. 650). Plaintiff showed reduced flexion, extension, and rotation in his cervical and lumbar spine, but full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally during the examination. (T. 651). Plaintiff also showed intact hand and finger dexterity, as well as full grip strength. (*Id.*)

During the examination, plaintiff reported that he cooked up to four times per week, and did cleaning and laundry once a week. (T. 649). He shopped twice per month, and regularly left his home to visit family. (*Id.*) This is consistent with plaintiff's hearing testimony regarding his typical daily activities. Plaintiff testified that he was usually able to perform household chores such as sweeping or mopping, drive to visit family, and prepare simple meals, but that he reduced his activities on days when his back pain was aggravated. (T. 81-83). Plaintiff also testified that he could not perform heavy lifting, but that he could carry ten to fifteen pounds without much difficulty. (T. 74, 84).

In reaching the physical RFC determination, the ALJ also relied upon the March 1, 2016 MRI of plaintiff's cervical spine. (T. 16). As described by Dr. Aaron Sasson in

11

the MRI report, plaintiff had moderate narrowing of the central canal at C5-C7, with mild narrowing at C5-C6. (T. 658). Dr. Sasson concluded that plaintiff's degenerative disc disease showed mild progression since a previous MRI in October 2014. (*Id.*) The ALJ also cited an October 22, 2013 electromyogram ("EMG") test that led to a diagnosis of peripheral neuropathy stemming from plaintiff's diabetes, as well as more recent treatment notes that showed that plaintiff's glucose testing and sensory exams were generally stable. (T. 673, 680-86, 695-97, 701, 705).

Based on his evaluation of the relevant medical evidence and plaintiff's testimony that supported the consultative examiner's opinion regarding plaintiff's "moderate" limitations with regard to standing, walking, bending, and lifting, the ALJ's determination that plaintiff could physically perform less than the full range of light work was supported by substantial evidence.[2] *See Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-638 (DNH), 2011 WL 2357665, at *6-7 (N.D.N.Y. May 20, 2011) (consultative examiner's opinion that plaintiff appeared to have moderate limitations with regard to bending, lifting, and prolonged standing and walking was consistent with ALJ's determination that plaintiff could perform most forms of light work); *see also Jordan v. Comm'r of Soc. Sec.*, 2018 WL 1388527, at *9-10 (S.D.N.Y. Mar. 19, 2018) (ALJ's determination that plaintiff could perform light work was supported by substantial

---

[2] Plaintiff relies on *Allen v. Colvin*, No. , 2016 WL 1261103, at *14 (N.D.N.Y. Mar. 30, 2016), to argue that remand is appropriate. However, this case is readily distinguishable. In *Allen*, the ALJ discounted a treating source opinion that was generally consistent with other record evidence, and he appeared to based his RFC determination on a consultative opinion that even the ALJ conceded was "vague," along with a state agency consultant's opinion that was never mentioned in the ALJ's written decision. *Id.* at *9-15.

evidence where consultative examiner's opinion of "moderate" limitations was consistent with objective medical findings in the record).

### 2.    Mental Limitations

Plaintiff also contends that the ALJ erred by failing to properly account for plaintiff's mental limitations in his RFC determination, particularly the amount of time that plaintiff would be off task. (Pl.'s Br. at 21-22). This court finds that the ALJ's consideration of plaintiff's mental impairments and the resulting RFC determination were supported by substantial evidence.

In reaching the mental RFC determination, the ALJ gave "great weight" to the majority of the February 22, 2016 opinion of Dr. Gerald Lippert, a psychiatrist who had treated plaintiff on a regular basis since August 2005.[3] (T. 17, 655-57). Dr. Lippert opined that plaintiff suffered from social phobia, attention deficit hyperactivity disorder, and major depression that was in partial remission. (T. 655). He opined that plaintiff had "limited but satisfactory" abilities to maintain attention for two hours segments, deal with normal work stress, interact appropriately with the general public, and maintain socially appropriate behavior. (T. 656). He otherwise opined that plaintiff had no psychiatric limitations that would affect his ability to work at a regular job on a sustained basis. (T. 656-57).

The ALJ assigned little weight to that portion of Dr. Lippert's opinion that was

---

[3] The ALJ also assigned "some weight" to a consultative psychiatric opinion provided by Dr. Mary Anne Moore, but discounted its findings related to plaintiff's social functioning that were not consistent with the overall record. (T. 17). Plaintiff has not challenged the weight assigned to this opinion.

based on plaintiff's physical limitations. (T. 17, 657). Dr. Lippert opined that plaintiff would be "off task (i.e. unable to maintain attention or perform at a consistent pace)" for ten percent of the workday, and was likely to be absent more than four days per month, but the psychiatrist noted that these limitations were "based on physical health." (T. 657). He noted that plaintiff's ability to function had improved with medication, and that plaintiff had shown no adverse side effects. (*Id.*) Dr. Lippert also opined that plaintiff's psychiatric condition did not "exacerbate the experience of pain or any other physical symptom." (*Id.*)

Plaintiff contends that the ALJ's RFC determination failed to adequately acknowledge Dr. Lippert's conclusions regarding plaintiff's ability to stay on task and regularly attend work.[4] However, the ALJ specifically considered that portion of Dr. Lippert's opinion, and discounted it because "there is no indication that the provider treated [plaintiff] for physical impairments." (T. 17). This was a valid consideration. A medical source's "specialty" is specifically listed as one of the proper considerations in determining the weight to be given to the medical reports. 20 C.F.R. § 416.927(c)(5). The ALJ's conclusion is also supported by Dr. Lippert's treatment notes in the record, which do not include any evaluations of plaintiff's physical health. (T. 593-640).

The ALJ determined the functional limitations imposed by the combination of plaintiff's physical and mental impairments after considering the objective medical evidence, relevant medical opinions, plaintiff's daily activities and the hearing

---

[4] Based on the VE testimony, there would be limited jobs available for an individual with plaintiff's RFC who would also be off task for ten percent of the work day. (T. 91-92).

testimony. Therefore, this court concludes that the ALJ's overall RFC determination that plaintiff could perform less than the full range of light work, was supported by substantial evidence.

## VII. STEP FIVE DETERMINATION

### A. Legal Standards

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper. *Id*. at 276-77.

15

### B. Application

In order to determine whether there were jobs that existed in significant numbers in the national economy that plaintiff could perform, the ALJ asked the VE a hypothetical question that mirrored his ultimate determination of plaintiff's RFC. (T. 88-89). The VE testified that, based on his professional experience, there were a series of jobs available in the national economy that an individual with that RFC would be able to perform. (T. 89-90). The ALJ relied on this testimony at step five. (T. 18). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

## VIII. DEVELOPING THE ADMINISTRATIVE RECORD

### A. Legal Standard

It is well-settled that, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ has an affirmative duty to develop the record, whether or not a plaintiff is represented. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). Prior to March of 2012, the regulations provided that when the treating physician's report contained "a conflict or ambiguity" that must be resolved, the ALJ was required to "seek additional evidence or clarification" from that source in order to fill in any clear gaps before rejecting the doctor's opinion. *Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 504-505 (S.D.N.Y. 2014) (citing, *inter alia, Correale Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010); 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (2010)). This duty arose if the physician's report was "insufficiently

16

explained, lacking in support, or inconsistent with the physician's other reports." *Id.*

Effective March 26, 2012, the Commissioner amended 20 C.F.R. §§ 404.1512 (e)(1) and 416.912(e)(1) to remove former paragraph (e), together with the duty that it imposed on the ALJ to re-contact the treating physician under certain circumstances. *Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (citing How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (codified at 20 C.F.R. § 416.912) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e)). The court applies the section in effect when the ALJ adjudicated plaintiff's claim. *Id.* The ALJ's decision in this case is dated November 23, 2016, thus, the new section applies.

The new section allows the ALJ to choose the appropriate method for resolving insufficiencies or inconsistencies, which is designed to afford adjudicators "more flexibility." *Perrin v. Astrue*, No. 11-CV-5110, 2012 WL 4793543, at *3 n.3 (E.D.N.Y. Oct. 9, 2012) (citing How We Collect and Consider Evidence of Disability, *supra*). The ALJ must attempt to resolve the inconsistency or insufficiency by taking one or more of the following approaches:

> (1) recontacting the treating physician or other medical source, (2) requesting additional existing records, (3) asking the claimant to undergo a consultative examination, or (4) asking the claimant or others for further information.

*Id*. (citing 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4)).

Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the plaintiff's RFC. *Covey*

*v. Colvin*, No. 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)).

   B.   **Application**

Plaintiff contends that the ALJ failed to properly develop the record, because he made no attempt to correct potential gaps in plaintiff's medical records. For example, the record includes treatment notes from Dr. Andrew Morpurgo and Dr. Anthony Sanito, who treated plaintiff's back pain in 2012 and 2013. (T. 400-414). Certain of these records appear truncated or incomplete, with some of the physicians' reports appearing to begin in the middle of a sentence. (T. 401-04, 407, 409). The ALJ reviewed the entire medical record, but concluded that medical evidence in the record covering the period between 2009 and March 2014 preceded the relevant period to evaluate plaintiff's SSI application, and did not bear on his decision. (T. 11). The ALJ also incorporated medical records addressing plaintiff's neck, back, and shoulder pain after March 14, 2014 into his determination, including physical examinations and imaging reports. (T. 648-53, 658, 672). It is evident, from the ALJ's analysis described above, that he had sufficient evidence to reach an RFC determination. Plaintiff has not suggested how reliance on the more remote records from Dr. Mopurgo and Dr. Sanito would have altered the ALJ's determination in plaintiff's favor.[5]

Plaintiff also asserts that more recent medical records may be missing from the

---

[5] For example, Dr. Mopurgo's notes show that plaintiff required steroid injections in his lumbar spine in August 2013, but plaintiff was primarily treating his pain with over the counter ibuprofen by July 2014. (T. 16, 85, 432, 648). This could suggest that plaintiff's condition had improved with treatment by the time of his application date of March 18, 2014.

18

administrative record relied upon the ALJ, citing three examples. First, plaintiff's 2016 imaging and nerve conduction studies were ordered by a nurse practitioner, Christina Morse, who is not referenced anywhere else in the record. (T. 658, 748). Plaintiff contends that Ms. Morse may have treated plaintiff for carpal tunnel syndrome, and thus may have treatment notes addressing the functional limitations of that impairment. Second, plaintiff's 2016 MRI report, which includes a detailed summary of the imaging results, notes that plaintiff's degenerative disc disease showed "mild progression" from a previous MRI taken on October 17, 2014. (T. 658). This earlier MRI is absent from the record. Finally, one of plaintiff's treating physicians, Dr. Matthew Ebrill, referenced unsuccessful attempts to use physical therapy and cyclobenzaprine to treat plaintiff's suspected fibromyalgia. (T. 711, 716). Plaintiff contends that the ALJ should have sought notes or other records related to this treatment, and if he had done so, would likely have found that plaintiff's fibromyalgia was a severe impairment. (Pl.'s Br. at 15).

Plaintiff's argument ignores the fact that the ALJ made several efforts to develop the record, including requesting updated consultative examinations. Most strikingly, the ALJ requested and obtained outstanding medical records at plaintiff's request, from his most recent treating physician, the Guthrie Medical Group. (T. 63-64, 288-90). At the hearing, the ALJ asked whether these records were "the only evidence that's outstanding," and plaintiff's counsel confirmed that the record was otherwise complete. (T. 64). Plaintiff's pre-hearing submittals, including updated summaries of recent medical treatment, and his hearing testimony make no reference to any of the medical

19

evidence that plaintiff now suggests would have been crucial to the ALJ's determination. (T. 67-80, 278, 283, 288). Plaintiff's contention that remand is necessary because the ALJ failed to "catch such passing references" to possible other treatment providers, in a medical record that otherwise appeared complete, overstates the ALJ's obligation to develop the administrative record. *See Jones v. Berryhill*, No. 16-CV-6042 CJS, 2017 WL 2222245, at *6 (W.D.N.Y. May 22, 2017) (remand was not required when physician notes mentioned mental health counseling from another provider that had not been made part of the record).

Despite plaintiff's speculation that other relevant medical records may exist, plaintiff has not documented any attempt to substantiate this claim. The only "new" medical evidence provided to the Appeals Council was a Medical Source Statement from Dr. Estill that was dated December 22, 2016, more than a month after the ALJ's decision. (T. 58-60). No new evidence was submitted to the court. Therefore, based on the ALJ's analysis of the medical evidence and his reasonable efforts to develop the record, this court concludes that there were no obvious gaps in the record before the ALJ, and that the ALJ's disability determination was supported by substantial evidence.

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated:     January 29, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge